Case 45.                        Burns *vs.* Ray, &c.

Pet. Eq.            APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A testator in one clause of his will devised to his wife a life estate
in a negro man and a woman, and at his wife's death the negro wo-
man and her increase to go to the children of his daughter, M. R.,
and his son James, in equal portions. In a subsequent clause he devised
other slaves to the children of his daughter, M. R.—a plantation and
two negros, Maria and Milly Ann—and then gave a life estate to their
mother, M. R., in these words: "The land and slaves herein willed
to my daughter M. R., it is herein provided and specially devised,
shall be and remain for the use and benefit of my said daughter M.
R. for and during her natural life." Held, that M. R. was not en-
titled to a life estate in the slaves named in the first clause of the
will in which he had given his wife a life estate, but only to those
named in the latter clause, and applied to no others.

2. "The possession of a tenant for life is not adverse to the devisee in
remainder, because consistent with his right, and does not deprive
him of anything to which he is entitled;" but so far as the life estate
is claimed it is adverse to the remainder man and all others, and five
years possession gives right to the extent of the interest claimed,
and no more.

3. The interest of tenant in remainder in slaves is liable to sale under
execution, but slaves should be sold separately, and be present that
they may be seen by the bidders.

[The facts of the case are stated in the opinion of
the court.—Rep ]

*Roberts* for appellant—

The appellant contends that by the will of James
Eubank two distinct classes of slaves named in the
will to-wit, the increase of the woman Teny, named
in the first clause, and the increase of Mariah and
Milly Ann, named in the third clause, passed and
were devised to Margaret Ray for life.

It is very certain that the first clause taken alone
does not give to Margaret Ray any interest in the
slaves named in that clause; but it is contended that
the third clause is broad enough, and does embrace
the slaves devised to the children of Margaret Ray,
and that Margaret Ray has a life estate in the in-

crease of the negro woman Teny, named in the first clause of the will. The appellee contends that the third clause has no reference whatever to the slaves referred to in the first clause. The appellant relies upon these words in the third clause as sustaining his construction of the will. By the third clause the testator devised to the children of his daughter Margaret, the plantation on which their mother lived, and two black girls named Maria and Milly Ann, and then devises a life estate to their mother in the following words: "The land and slaves herein willed ' to the children of my daughter, Margaret Ray, it is ' herein provided and specially devised, shall be and ' remain for the use and benefit of my said daughter, ' Margaret Ray, for and during her natural life." It is contended by appellant that the terms "herein willed" applies to all the slaves named in the entire will. This construction is denied by the appellee, who insist that "herein willed," &c., applies and is confined to *the land and slaves* mentioned in the third clause of the will, and no other.

The slaves named in the first clause had been already given to the testator's widow for life, and it would be strange if he would carve out two life estates out of the same slaves. There can be no rational doubt as to the meaning of the testator.

2. The sale by the sheriff was invalid, and conferred no title on the purchaser: 1. Because there was no legal levy of the execution, the sheriff never having the possession of the slaves. 2. The slaves were not exhibited to the bidders at the sale. 3. The entire interest in the slaves was sold in gross by Hamilton the sheriff. These facts are substantially admitted by the pleadings, and known to all concerned in the sale and purchases.

The chancellor seems to think that the chancellor must regard the sale made by the sheriff as binding though irregular, and unless it be *void* he cannot disturb the right of a purchaser. This court has de-

cided different. (See *Blight's Ex'ors vs. Tobin*, 7 *Monroe*, 615.)

3. There has been no such adverse holding as to bar this suit. (See *Simrall's ad'mr vs. Graham*, 1 *Dana*, 574.)

*Pirtle & Ballard*, for appellees—

The appellant claims to be the owner of the slaves in contest as follows:

1. Under a bill of sale executed to him by Gad Chapin on the 3rd July, 1849.

2. A bill of sale executed by himself and wife, who is a daughter of Margaret Ray, to said Chapin on the 3rd of July, 1849.

3. Under the will of James Eubank, which was proved and admitted to record on the third of July, 1826·

The plaintiff in pleading concedes that the defendant, Margaret Ray, has, under the will of James Eubank, a life estate in the slaves Maria, Milly Ann, and their increase, and does not ask a division of them, but insists the said Margaret acquired no interest under said will in Teny and her increase. We are not able to ascertain by the pleadings which of, the slaves are the increase of Teny, and which the increase of Maria and Milly Ann. It follows, if the plaintiff's construction of the will of Eubank be correct, that he has established no present claim beyond the value of Teny—which we do not find to be proved. It is clear that some of the slaves named in the original petition were not included in the division referred to in the petition, nor are they the descendants of those included.

The plaintiff sets up no claim to Teny and her increase, except through the will of Eubank, and if Teny and her increase were devised by Eubank directly to the children of Margaret Ray, and Margaret Ray has no life estate in them, then it is manifest that plaintiff's claim is entirely unfounded, for it is clear that no slaves passed by the bill of sale refer-

red to except those which were devised to Margaret Ray during life. If the plaintiff's wife, at the date of the bill of sale, owned jointly with her sister the whole estate in Teny and her increase, then that interest was not passed by the bill of sale, for nothing is passed by the bill of sale except those slaves which the plaintiff's wife owned in remainder after the determination of Margaret Ray's life estate. Again: If the plaintiff contrary to what he alleges in pleading, be allowed to set up any claim to the slaves, other than that derived under said bill of sale, still he excludes himself from any claim by the construction which he puts upon Eubank's will, taken in connection with the undisputable facts of the case. Margaret Ray has had possession of the slaves *for more than* fifteen years claiming a right to hold them against her children and all others; by virtue of holding she has perfected her right, whatever it was originally; her claim has been either to a life estate or the absolute right, but whatever it has been it is made good by the adverse holding

But if this view cannot be sustained, we cannot be wrong in insisting that Mrs. Ray acquired a valid title to Teny under the sale under the execution purchase by Mrs. Campbell, and her purchase from Mrs. Campbell. Mrs. Ray had a life estate in Teny under the will of James Eubank and the remainder under the execution sale.

What is the true construction of the will of Eubank? By the first clause the-testator gave to his wife a life estate in Teny and her increase, and in Isom, and upon the death of the wife, Teny is to pass to the children of Margaret Ray, his daughter; Isom to his son James Eubank; and the increase of Teny equally to James Eubank and the other half to Margaret Ray's children. It is more than probable that the testator, in giving to his wife a life estate in Teny, would not have mentioned her increase had he not had present to his mind a different disposition

of the remainder in Teny from that of her increase. To carry out his design the testator was obliged to distinguish between Teny and her increase, and being obliged to make this distinction in one part of the clause, it was quite natural to adopt it in the beginning without any special design. He did not deem it necessary to name the "increase" in order to pass it, it is apparent from the devise of Maria and Milly Ann. At the end of the first clause the following language occurs: "I also give unto my wife, Mary, ' the one-third part of all my personal property of ' every description, not herein legacied." It is plain that the words herein refer to the whole will, and not to the particular clause in which it occurs.

By the second clause is given to James Eubank property in which the wife is to have no interest; and by the third clause he gives property to the children of Margaret Ray in which his wife is to have no interest, and then, as if just recollecting that he had made no provision for Margaret herself, he says: "the land and slaves herein willed to the children of ' my daughter, Margaret Ray, it is herein provided ' and specially devised, shall be and remain for the ' use and benefit of my said daughter, Margaret Ray, ' for and during her natural life;" that is, as we construe the will, it gives to Mrs. Ray a life estate in all the property given to her children by the first as well as the third clause of the will.

It is true that no land is given to the children of Margaret Ray, except by the third clause, but slaves are given to them by both the first and third clauses of the will. The terms "the land and slaves herein willed to the children," &c., actually include all the land and all the slaves devised in any part of the will. If the testator had not understood the words "herein willed" as embracing all the land and slaves mentioned in the whole will, he would not have followed them by the words "to the children of my daughter, Margaret Ray," and then restricted the life interest devised to his daughter to the land and

slaves devised to her children. If he had understood the words "herein willed" as embracing only the lands and slaves mentioned in the clause in which they are found, then there was no use in the restrictive words, for in the clause in which they are found no land or slaves had been devised to any one but the children of Margaret Ray. Then, in using the restrictive words, the testator not only meant to exclude the idea that Margaret was to have a life estate in the slaves devised by the whole will to his son James, but to include the idea that she was to have a life estate in all the land and slaves devised in any part of the will to her children. Moreover, when the testator, has, as before shown in the first clause of the will, used the word "herein" as referring to the whole will, there is no ground for contending that he used it in any other sense in the third clause. No argument can be deduced from the fact that the word "increase" is dropped in the third clause. There was no longer any necessity for distinguishing between Teny and her increase, as there was in the first clause; and besides, the word increase could not have been introduced into this clause without producing an inaccuracy or a long and awkward sentence. We are satisfied that the testator not only intended to give Margaret a life estate in all the slaves devised to her children, but that his will is decidedly emphatic on the subject. "It is herein ' provided and expressly devised that the land and ' slaves herein devised to the children of Margaret ' shall be for her use and benefit, during her natural ' life." It is as if the testator had said, "I wish it to ' be expressly understood that my daughter is to have ' a life estate in all the land and slaves devised to ' her children."

The inference from the will is, that Margaret Ray had an improvident husband, and hence the property intended for her is secured for her use and benefit for life only, and then passes to her children. We suppose that if the testator intended to give to his

daughter a separate estate in the property intended for her use, it was to be "for her use and benefit"— the legal title to be in the grandchildren, but "the use" in their mother and most probably the separate use. (See *Griffith's admr. vs Griffith*, 5 *B. Monroe*, 114.)

It is certainly a powerful argument in favor of that construction of the will for which we contend, and one which the court will not disregard; that the parties understood it as we now insist it should be construed, not only at the time of its publication but ever since until very recently, and this the petition, in substance, admits. (See *amended petition filed October*, 1856.) We do not suppose this court will reject the cotemporaneous construction of the will acquiesced in by all the parties interested, merely because astute counsel have discovered another plausible construction. We urge that the construction put upon the will by the parties is that which every plain common sense man would give it.

If the plaintiff had any interest in the slaves it was such an interest as was subject to sale under execution. It was sold under the execution of Ann Campbell, and purchased by her, and afterwards transferred to Mrs. Ray.

The sale, however, is attacked on various grounds, for fraud, irregularity, failure to levy, &c. The return of the officer shows a regular levy of the execution, gives the name, age, &c., of the slaves; that they were regularly advertised, &c. This cannot be contested by a party to the execution. (*Armstrong vs Eastin*, 1 *B. Monroe*, 68; *Shuffet vs Menifee*, 4 *Dana*, 150; *McConnel vs Bowdry's heirs*, 4 *Monroe*, 399; *Sargeant Court of Appeals vs. George*, 5 *Litt.* 199; *Smith vs Hornback*, 3 *Mar.* 393; *Small vs Hodgen*, 1 *Litt.* 17; *Guy vs Guy*, 3 *Litt*; *Trimble vs Frame, Tuylor vs Lewis*, 2 *J. J. Marshall*, 400.) At any rate the officer's return cannot be disputed in the mode which is here attempted by the plaintiff. It can only be attacked by an appropriate proceeding in the court from which

the execution issued. But there was no irregularity. The sheriff had no right to disturb the possession of the particular tenant. The levy was not upon the slaves themselves, but upon the remainder in the undivided half of them—which was, in one sense, an abstract and intangible thing, not susceptible of delivery, even when that which is the subject of delivery, it is proper for the officer to leave the possession where he finds it, though it be with the defendant in the execution. The return does not show that the defendants interest in the slaves was sold in *solido;* each should have been sold separately; the presumption is that they were so sold and the plaintiff cannot contest that fact in this proceeding; but if the sale was in *solido* it was not therefore void, nor even irregular. The defendants interest was but a unit, and not divisible; the defendants interest was an undivided interest in remainder in all the slaves. It has been held by the court that the sale of a mother and child, and husband and wife, is regular. (*Lawrence vs Speed,* 2 *Bibb,* 401; *Hill vs Harris,* 10 *B. Monroe,* 120.)

There was no sacrifice of the plaintiff's interest; he had but an interest undivided in certain slaves; he had rendered that interest less valuable by certain conditions in the deed from Chapin. Upon his death, or in ten years after his marriage, the slaves were to be free, either of which events might happen during the pendency of the life estate, and thereby defeat his interest.

No evidence of fraud can avail unless it involved the purchaser and sub-purchaser as well as the sheriff.

*Riley & Muir,* for Hamilton—

We have nothing to say touching the proper construction of Eubank's will. That subject has already been so fully and so ably discussed on both sides that we feel disinclined to urge anything further.

In reference to the sale made by Hamilton under the execution of Mrs. Campbell, we respectfully submit the following suggestions:

1. If the sale shall be held *irregular* it can only be set aside on motion addressed to the court whence the execution emanated. The chancellor has no power to "deface" the records of the circuit court. (*McGee vs Ellis, &c.*, 4th *Littell*, 247–8.) Of course this proposition assumes that there is no proof of fraud in the case. This assumption is true, for there is no such proof.

2. In no event can Hamilton be made liable for more than the sum realized by the sale under the execution, and interest thereon. If liable at all it must be upon the principle that in all such sales there is an *implied warranty* of title. If sued upon such implied warranty no more can be recovered than the amount *paid him*, and interest thereon.

3. And if liable at all, that liability is to the *execution purchaser*, Mrs. Campbell, and not to the plaintiff. Upon failure of title she might recover because the implied warranty of title *is to her* and to no other. She has no suit against Hamilton, and therefore can have no decree against him.

4. We think the sale was regular and valid. The slaves being in the possession of Mrs. Ray, and the plaintiff owning but a remainder interest in them, the sheriff had no right to take them into his custody; nor could he have sold them in any other way than he did; for it will be recollected that the interest of the plaintiff was an *undivided* interest.

5. But suppose the sale was *void*, as is contended by Mr. Roberts, then as to *Burns* it was a very *harmless thing*. What has the sheriff done? Has he ever touched the plaintiff's slaves? He has not. He left them where he found them, and has never attempted to deliver them to another. He *wrote* something about them on the back of an *execution*, and *talked* about them at the *court house door*, but all this the plaintiff himself says was mere idle mummery. If

the sale passed *no title,* and Hamilton never had *possession* of the slaves, and never *authorized another* to take possession of them: how has he injured the plaintiff. If the sale was *void* the rights of the plaintiff were not in any degree affected by it. The allegation of *fraud* not having been proved, the whole case fails as to Hamilton. We therefore ask that as to him the decree of the chancellor be affirmed.

Judge SIMPSON delivered the opinion of the court.          Oct. 9, 1857.

The testator, James Eubank, devised to his wife a negro woman named Teny and her increase, and a boy named Isom, for and during her natural life; and at her death the boy Isom was to go to his son James, and Teny to the children of his daughter, Margaret Ray. The increase of Teny was to be divided between the devisees in remainder—one-half was to belong to James, and the other half to Margaret's children.

The testator, by a subsequent clause in his will, devised to the children of his daughter Margaret the plantation on which their mother lived, and two black girls named Maria and Milly Ann, and then devised a life estate to their mother, in the following language: "The land and slaves herein willed to the 'children of my daughter, Margaret Ray, it is here- 'in-provided and especially devised shall be and re- 'main for the use and benefit of my said daughter, 'Margaret Ray, for and during her natural life."

Margaret Ray claims a life estate under this devise not only in the slaves Maria and Milly Ann, but also in Teny, and that part of her increase which was devised to her children after the death of the testator's widow.

To sustain this claim, it is contended that the words "herein willed to the children of my daughter, Margaret Ray," referred to all the slaves devised to them in any part of the will, and gave their mother a life estate, not only in the slaves mentioned in that clause of the will, but also in those in which her children

1. A testator in one clause of his will devised to his wife a life estate in a negro man and a woman, and at his wife's death the negro woman and her increase to go to the children of his daughter, M. R., and his son James, in equal portions. In a subsequent clause he devised other slaves to the children of his daughter, M. R.—a plantation and two negroes, Maria and Milly Ann—and then gave a life estate to their mother, M. R., in these words: "The land and slaves herein willed to my daughter M. R., it is herein provided and specially devised, shall be and remain for the use and benefit of my said daughter M. R. for and during her natural life.' Held, that M. R. was not entitled to a life estate in the slaves named in the first clause of the will in which he had given his wife a life estate, but only to those named in the latter clause, and applied to no others.

under the clause first mentioned had but an estate in remainder.

We do not think the will of the testator is susceptible of such a construction, without doing violence both to the language used by him and his obvious meaning and intention.

The land and slaves "herein willed" evidently referred to the land and slaves just mentioned and devised in that clause of the will to the children of Margaret Ray. By the word "herein" the testator did not intend to refer to the whole will, but only to that clause of it in which the word was used, and to the property therein devised. This is made perfectly manifest by the description of the property in which his daughter was to have a life estate. It was the *land* and *slaves* "herein" willed to her children. And as the testator had, in the same clause, willed to them the tract of land on which she lived, and the two slaves Maria and Milly Ann, they were evidently the land and slaves "herein willed" to them, to which he referred.

The testator had given the slave Teny and her *increase* to his wife during her life, and he could not have intended, in making a provision for his daughter merely during her life, to 'have devised the same slave to her. Such a devise might not have been of any benefit to her, as she might have died before her mother. He therefore gave her children an estate in remainder in the slave and her increase, after the death of his wife, and also gave to them a like estate in the slaves he devised to his daughter.

We consider the two devises as distinct and independent, and wholly unconnected with each other. The last one has no reference to the first, and consequently Margaret Ray did not acquire any right, under the will, to Teny and her increase.

She has, however, had the possession of these slaves for twelve or fifteen years, claiming to have a life estate in them under the will, and only recognizing the right of her children to them after her death.

Can she avail herself of this possession to defeat a recovery against her by her children during her lifetime, or has her possession been of such a character as to deprive her of the right to rely on the .statute of limitations against them?  The possession of a tenant for life is not adverse to the devisee in remainder, because it is entirely consistent with his right, and does not deprive him of anything to which he is entitled.  But so far as the life estate is concerned the possession of the tenant for life is adverse to the remainder-man, as well as to all other persons. Here the mother has claimed a life estate in the slaves against the right of her children.  She admits their right to them after her death, but denies it during her life    Her possession was amicable so far as their right is recognized by her, but it was adverse so far as she denies and holds in opposition to it. Five years adverse possession vests her with a right to the extent of the interest she claims in the slaves. If she had held and claimed them absolutely as her own property for five years, the right of her children to any interest in them would have been barred. As she has held and claimed a life estate in them for more than five years before this action was commenced, their right to them during her life is barred. Their cause of action accrued when she took them into her possession and claimed to have a life estate in them.   She thereby denied their right to them during her life, and the statute immediately commenced running against their claim.   Her admission that they were entitled to them after her death did not operate to prevent the running of the statute against their right to them during her life, but only saved from its operation their right to them after her death.

Margaret Ray has therefore acquired, by her adverse possession, an estate for life in Teny and that part of her increase which was devised to her children.

The only remaining question to be considered is the validity of the sheriff's sale of the plaintiff's in-

*Margin notes:*

Burns
vs.
Ray, &c.

2. "The possession of a tenant for life is not adverse to the devise in remainder, because consistent with his right, and does not deprive him of anything to which he is entitled;" but so far as the life estate is claimed it is adverse to the remainder-man and all others, and five years possession gives right to the extent of the interest claimed, and no more.

3. The interest of tenant in remainder in

terest in the slaves devised. The only interest he had was an estate in remainder. It is well settled that such an interest is liable to execution. But we are of the opinion that the sale was not legally made, and that the manner in which it was conducted, the great sacrifice of the property sold, and all the circumstances attending the levy and sale, justify the conclusion that it was collusive; and being against conscience it should be set aside by the chancellor. The slaves were not sold separately, but were sold together; they were not present at the sale, and it is not certain that any actual levy on them was ever made. The purchase was made by the attorney of the plaintiff in the execution, and the benefit of it immediately thereafter transferred to Mrs. Ray. The latter was apprized of the fact, that the slaves had been sold without being present, they being in her possession at the time; and there is reason to believe, from the nature of the debt and other circumstances, that the suit was brought at her instance, under an arrangement that the plaintiffs interest in the slaves should be sold and purchased for her benefit.

The chancellor should, therefore, have set aside the sale upon equitable terms. The plaintiff should be required to pay the purchase money and interest thereon to the defendant, and on failure to do so in a reasonable time, to be designated by the court, his interest in remainder in so many of the slaves as may be necessary for the purpose, should be sold, and the proceeds applied to the payment thereof.

The slaves sold by Mrs. Ray and her daughter Malinda should be regarded as part of the share of the estate in remainder to which said Malinda is entitled as devisee. The effect of which will be to increase the interest of the plaintiff in the rest of the slaves, in which they have an undivided interest in remainder.

Wherefore, the judgment is reversed, and cause remanded for further proceedings consistent with the principles of this opinion.